IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JEWS FOR JESUS, INC., a foreign non-for-profit cor-poration, ALLEN G. ABRAHAM-SON, individually and in a representative capacity as a member of JEWS FOR JESUS, INC., PENNY J. ABRAHAMSON, individually and in a repre-sentative capacity as a member of JEWS FOR JESUS, INC., | ) ) ) ) ) ) ) ) ) ) ) | No. CV-04-695-HU |
| Plaintiffs, | ) ) | OPINION & ORDER |
| v. | ) ) ) | |
| PORT OF PORTLAND, OREGON, a public body of the State of Oregon, | ) ) ) ) | |
| Defendant. | ) ) ) | |

Herbert G. Grey
4800 S.W. Griffith Drive, Suite 230
Beaverton, Oregon 97005

Frederick H. Nelson
AMERICAN LIBERTIES INSTITUTE
P.O. Box 547503
Orlando, Florida 32854-7503

    Attorneys for Plaintiffs

/ / /

1 - OPINION & ORDER

Karen O'Kasey
HOFFMAN, HART & WAGNER, LLP
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205

Attorney for Defendant

HUBEL, Magistrate Judge:

Plaintiffs Jews for Jesus, Inc. (JFJ), Allen Abrahamson, and Penny Abrahamson, bring this action against defendant Port of Portland, contending that defendant's restrictions on First Amendment activities at the Portland International Airport (PDX) violate plaintiffs' free speech and free exercise of religion rights under the First Amendment, as well as due process and equal protection rights. Plaintiffs also bring a negligent supervision and retention claim.

Defendant moves for summary judgment on all claims. All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motion.

BACKGROUND

Plaintiff JFJ is a California non-profit corporation with offices located in Portland. Allen and Penny Abrahamson are residents of Portland and members of JFJ.

Defendant operates PDX. PDX has a free speech policy requiring any person wishing to perform speech activities at PDX to obtain a permit before doing so.

In relevant part, the policy provides that a limited number of locations will be assigned on a first-come, first-served basis for any particular day. A permit is valid for seven successive days, but can be renewed. The policy limits the size of signs that may

2 - OPINION & ORDER

be displayed and prohibits permittees from bringing their own tables, display tables, or chairs into PDX. However, PDX itself will provide a limited number of tables and chairs for display purposes.

On December 22, 2003, Allen Abrahamson distributed leaflets at PDX for JFJ. After two hours, he left voluntarily. Although the leafleting was done without a permit, Allen Abrahamson was not asked to leave. Although the Abrahamsons planned to leaflet again at PDX on December 23, 2003, or December 24, 2003, as well as December 26, 2003, they did not do so because someone from PDX called them on December 22, 2003, to say that they must have a permit for leafleting at PDX. They were instructed to contact Paula Sorensen to set up a meeting. Sorensen was unable to meet with the Abrahamsons until December 29, 2004. When Penny Abrahamson spoke with Sorensen by phone on December 24, 2003, and indicated they wanted to leaflet on December 26, 2003, Sorensen said no, not until she had met with them.

During the December 29, 2003 meeting with Sorensen, Allen and Penny Abrahamson were given permit applications. They never filled them out or submitted them. They have not attempted to distribute literature at PDX since the meeting.

Sorensen is in charge of issuing free speech permits at PDX. She uses the same form for every applicant and has no discretion to decide what form a permit takes. If more than one group wants a permit for the same time period, she issues the permit to both groups. Permits are required regardless of the number of people who seek to engage in free speech activity. If the number of people under one permit is an issue, the permit is issued, but the

3 - OPINION & ORDER

number will be revised based on the space being used.

One of the stated purposes of the permit process is documentation of who is at the airport. Additionally, the policy is intended to balance an individual's free speech rights with PDX's need to ensure passenger safety, traffic flow, airport security, and other airport operational needs. Identification of permittees also allows PDX staff to fax a form to the permittee or to contact them if there is a problem.

Sorensen generally issues the permit the same day the permit application is completed. Pursuant to the PDX policy, however, requests for permits should be submitted not less than two, or more than seven, days in advance of the date of intended use.

Sorensen has never denied a permit to anyone. While she stated that the content of the information being distributed does not factor into a decision to issue the permit, she also stated that she would not issue a permit to someone who would be handing out something offensive. Sorensen Depo. at pp. 32-34. When asked what was her understanding of something offensive, she stated that because the items were being distributed to the public, "you wouldn't want something to be objectionable to the public[.]" Id. She then explained she would use her own discretion to determine what sort of subjects would be objectionable. Id. She specifically noted that something with a sexual connotation might be objectionable. Id. at p. 34.

The free speech locations at PDX are the north and south "passthrough" locations. At their December 29, 2003 meeting with Sorensen, the Abrahamsons expressed unhappiness with the designated areas for free speech activities. Sorensen explained that the

4 - OPINION & ORDER

designated areas are based on passenger flow and attempting to provide the speakers with best visibility. The Abrahamsons' requests to stand next to the posts, around baggage claim, or on the sidewalk, were rejected.

For location, the airport looks at the number of speakers for congestion purposes, whether a location is a safe place for people to be, whether it will cause congestion, and whether the location is visible to the people the speakers want to reach. Plaintiffs note that Sorensen allowed at least one group to utilize the public sidewalk or baggage claim. In deposition, Sorensen explained that the group was the Alaska Airlines flight attendants and that because of construction at the airport, they were given an area near a baggage carousel so they would be visible to their targeted client. Sorensen Depo. at p. 34. She explained that this was a unique situation. Id.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative

5 - OPINION & ORDER

evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

DISCUSSION

Defendant argues that because plaintiffs never actually applied for a permit and thus, were never denied one, they lack standing to raise any claim other than a First Amendment facial challenge to PDX's permit policy and that plaintiffs' facial attack fails because the policy is constitutional.

/ / /

6 - OPINION & ORDER

I. Standing

     Under Article III to the United States Constitution, federal court jurisdiction is limited to "cases" or "controversies." <u>The Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004). Standing is an essential component of the case or controversy requirement. <u>Id.</u> ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.").

     To satisfy Article III's standing requirements, a plaintiff

          must show that (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Id.</u> (internal quotation omitted). Plaintiffs bear the burden of proof on standing. <u>See</u> <u>Northwest Envtl. Defense Ctr. v. Bonneville Power Admin.</u>, 117 F.3d 1520, 1528 (9th Cir. 1997) (burden of proof for standing is on party invoking federal jurisdiction).

     When there is no injury in fact, the court need not address the second and third standing requirements of causation and redressability. <u>Carroll v. Nakatani</u>, 342 F.3d 934, 943 (9th Cir. 2003).

     For an association such as JFJ to establish standing, the association must show, at a minimum, that its "'members would otherwise have standing to sue in their own right.'" <u>The Cetacean Cmty.</u>, 386 F.3d at 1179 (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000)). When no member of the association has suffered an injury in fact, this

7 - OPINION & ORDER

minimum requirement is not met. <u>See</u> <u>San Diego County Gun Rights</u> <u>Comm. v. Reno</u>, 98 F.3d 1121, 1130-31 (9th Cir. 1996) (when individual members of plaintiff association did not suffer an injury in fact, association failed to meet first requirement of associational standing). Thus, for JFJ to have standing, at least one of its members must have suffered an injury in fact.

Plaintiffs Allen and Penny Abrahamson cannot show an injury in fact in the context of their "as applied" free speech claim because they have not yet applied for a permit at PDX. <u>Madsen v. Boise</u> <u>State Univ.</u>, 976 F.2d 1219, 1220 (9th Cir. 1992) (plaintiff lacked standing to bring section 1983 claim alleging handicap discrimination for university's failure to offer free handicap parking permits when plaintiff himself had not applied for permit); <u>BJS No. 2, Inc. v. City of Troy</u>, 87 F. Supp. 2d 800, 805 n.4, 806 n.7, 816 n.13 (S.D. Ohio 1999) (in First Amendment challenge to an adult entertainment zoning ordinance, court held that plaintiff could not bring an "as-applied" claim because the ordinance had not actually been applied to plaintiff when the plaintiff had not yet sought and been denied a permit).

In a 1999 case, the Ninth Circuit cited <u>Madsen</u> in discussing an as-applied First Amendment challenge to a National Park Service free speech permit rule in place at the Presidio in San Francisco. <u>United States v. Baugh</u>, 187 F.3d 1037, 1041-42 (9th Cir. 1999). The court reiterated that "one may not challenge a rule or policy to which one has not submitted himself by actually applying for the desired benefit." <u>Id.</u> (internal quotation omitted). The court explained that "[a] central reason for this requirement is to ensure that the challenged policy actually affected the person

8 - OPINION & ORDER

challenging it." Id. at 1042; see also Lombardo v. Warner, No. 98-3001-CO, Findings & Rec. at p. 7 (D. Or. Jan. 23, 2002), adopted by Judge Hogan, February 25, 2002 (plaintiff lacked standing to pursue "as applied" First Amendment and due process challenges to an Oregon statute because the plaintiff had not himself applied for a variance).[1]

Plaintiffs contend that they have standing to mount their as-applied challenges even without having applied for the permit because they have demonstrated the existence of a credible threat of injury. In their affidavits, Allen and Penny Abrahamson each state that they have not returned to distribute literature at PDX because they fear the risk of arrest and incarceration if they do so. A. Abrahamson Affid. at p. 4; P. Abrahamson Affid. at p. 4.

However, the evidence in the record shows that when the Abrahamsons distributed leaflets without a permit, they were left undisturbed. Other than the individual plaintiffs' statements that they feared arrest, there is no evidence in the record showing that anyone ever actually told them that they would be arrested or prosecuted for leafleting at PDX without a permit. At oral argument, plaintiffs' counsel was unable to identify what the basis of an arrest would be if the Abrahamsons returned to leaflet without getting a permit.

Based on the record, the Abrahamsons have not shown a credible threat of prosecution. They have shown only speculation. In such

---

[1] The Ninth Circuit recently issued a decision in the case certifying questions to the Oregon Supreme Court, but the plaintiff did not pursue the "as applied" ruling on appeal. Lombardo v. Warner, 391 F.3d 1008, 1009 n.2 (9th Cir. 2004).

9 - OPINION & ORDER

circumstances, the law does not support their position that they are excused from applying for a permit before maintaining an as-applied challenge to the PDX policy. Babbitt v. United Farm Workers Nat'l Un., 442 U.S. 289, 198-99 (1979) (in the context of a constitutional challenge to a criminal statute, it is not necessary that the plaintiff first expose himself to actual arrest or prosecution if there is a credible threat of prosecution; persons having no fear of prosecution except those that are imaginary or speculative do not allege a dispute susceptible to resolution by a federal court); San Diego County Gun Rights Comm., 98 F.3d at 1126 (plaintiffs must show a "genuine threat of imminent prosecution"; an "imaginary or speculative fear of prosecution is not enough" and the "mere possibility of criminal sanctions applying does not of itself create a case or controversy") (internal quotations omitted).

Without a credible threat of prosecution, the cases plaintiffs rely on are distinguishable. In Jacobs v. The Florida Bar, 50 F.3d 901, 904-05 (11th Cir. 1995), the plaintiff had standing to bring an as-applied challenge to a number of new advertising regulations for lawyers when he was threatened with discipline if he continued to use now-prohibited advertisements. In another Eleventh Circuit case, the plaintiff had standing to bring an as-applied due process challenge to a county ordinance requiring professional fundraising consultants to register with the county when at least one fundraiser had been directly informed that failure to register would result in both a fine and imprisonment. American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 221 F.3d 1211, 1214-15 (11th Cir. 2000). No comparable threat exists

in the instant case.

During oral argument, plaintiffs cited a 2003 Ninth Circuit case for the proposition that a permit application is not a prerequisite to bringing an as-applied challenge. In Brown v. California Department of Transportation, 321 F.3d 1217 (9th Cir. 2003), the Ninth Circuit held that the defendant's policy of exempting only American flags from its permit requirement for display of signs or banners on highway overpasses, was unconstitutional.

In the context of discussing whether the plaintiffs had shown irreparable harm in support of the preliminary injunction allowed by the district court, the court discussed the defendant's argument that because the plaintiffs could have applied for a permit to express their message and thus, had alternate means of expression, they could not show irreparable injury. Id. at 1225. The court rejected the argument. Id. The court noted that the defendant's policy "authorizes permits for the display of signs providing directional assistance to motorists attending special events[.]" Id. The court noted that the plaintiffs' banners were neither "directional" nor related to a "special event" and the argument that they could apply for a permit was "disingenuous at best." Id.

The case does not support plaintiffs' position here. First, the issue arose in the context of the irreparable injury prong of a preliminary injunction analysis, an issue not present here. Second, and more importantly, the plaintiffs in Brown did not need to apply for a permit because doing so would have been futile given the permit criteria. No such futility is present here.

Without having applied for a permit, plaintiffs cannot

11 - OPINION & ORDER

maintain their claim that the permit policy, as applied to them, violates their free speech rights. They also cannot maintain an as-applied free exercise of religion claim. See <u>United States v. Hugs</u>, 109 F.3d 1375, 1378-79 (9th Cir. 1997) (in defense to criminal charge, defendants had standing only to bring facial challenge, and not as-applied challenge to statute, in absence of application for permit under statute).

In addition, without having applied for a permit, plaintiffs cannot maintain their due process or equal protection claims. <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S. 163, 166-67 (1972) (African-American plaintiff had no standing to pursue equal protection claim challenging private club's membership practices when he had not actually applied for membership himself); <u>Carroll</u>, 342 F.3d at 940 (no standing to pursue equal protection claim because generalized grievance against allegedly illegal government conduct is insufficient to confer standing; noting that "even if a government actor discriminates on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment") (internal quotation omitted); <u>Amsat Cable, Ltd. v. Cablevision of Conn. Ltd. Pship</u>, 6 F.3d 867, 873 (2d Cir. 1993) (plaintiff lacking standing to assert equal protection claim when there was no evidence that it had sought to provide service in a building open to franchised cable providers); <u>Southern Blasting Servs, Inc. v. Wilkes County, N.C.</u>, 288 F.3d 584, 595 (4th Cir. 2002) (plaintiff lacked standing to bring due process claim when plaintiff had never applied for blasting permit); <u>Bach v. Pataki</u>, 289 F. Supp. 2d 217, 223 (N.D.N.Y. 2003) (recognizing general requirement that plaintiff apply for permit before having

12 - OPINION & ORDER

standing to bring due process and other claims, but acknowledging exception when the facts presented showed that the application would have been futile); see also Tennison v. Paulus, 144 F.3d 1285, 1287 (9th Cir. 1998) (without evidence that Oregon Educational Act for the 21st Century had actually been applied to any specific individual plaintiff, plaintiffs lacked standing to bring due process claim; plaintiffs could proceed only on facial First Amendment challenge).

As for the negligent supervision and retention claim, defendant contends that because the challenged regulation was never used to deny plaintiffs a permit, they do not have standing to pursue their negligent supervision and training claim. At oral argument, defendant noted that its argument as to this claim may be characterized as one addressed to standing or one based on failure to state a claim. Either way, defendant maintains, without having been denied a permit because they never applied for one, plaintiffs have shown no harm due to any actions by defendant's employees. As such, plaintiffs simply cannot sustain a negligent supervision and retention claim.

I agree with defendant. Regardless of whether it is described as a standing issue or a failure to state a claim issue, plaintiffs' failure to apply for a permit is fatal to their negligent supervision and retention claim. Without having applied for a permit, no employee of defendant's has had to make any decision or take any action vis a vis plaintiffs that could demonstrate that the employee had been negligently supervised in the area of constitutional rights, or negligently retained in the face of such unconstitutional action. Thus, causation from the

13 - OPINION & ORDER

alleged negligence, if any, is impossible to establish. The existence of the policy itself, while the proper subject of a facial First Amendment challenge, does not provide plaintiffs with the basis for a negligent supervision and retention claim.

Accordingly, I grant summary judgment to defendant on plaintiffs' as-applied free speech and free exercise of religion claims, and on plaintiffs' due process, equal protection, and negligent supervision and retention claims.

## II. Facial Challenge - Expression

### A. Applicable Law

In 1983, the Supreme Court held that the constitutionality of government restrictions on free speech activity initially depends on the nature of the forum in which the restriction is applied, and then on the type of restriction. <u>Perry Educ. Ass'n v. Perry Local Educ. Ass'n</u>, 460 U.S. 37, 44-46 (1983). The Court has since articulated three distinct categories of government "fora" recognized for free speech activities: (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora. <u>Id.</u>; <u>International Soc'y for Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672, 686 (1992).

Airport terminals and buildings are nonpublic fora. <u>Lee</u>, 505 U.S. at 685, 686. In <u>Lee</u>, the Krishna organization challenged a New York Port Authority ordinance banning all solicitation and distribution of literature in the three major New York airports. The Court held that since the airport was a nonpublic forum, the total ban on solicitation was constitutional, because solicitation may have a disruptive effect on business by slowing the path of both those who must decide whether to contribute and those who must

14 - OPINION & ORDER

alter their path to avoid the solicitation. Id. at 683.

In a companion case, the Court addressed the Port Authority's total ban on leafleting. Lee v. International Soc'y for Krishna Consciousness, 505 U.S. 830 (1992). The Court found the total ban to be unconstitutional. Id. at 831.

In a nonpublic fora, the government has greater latitude to impose time, place, and manner restrictions on speech. "When a forum is nonpublic, [the court] review[s] government-imposed restrictions under a reasonableness standard. 'The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation.'" Currier v. Potter, 379 F.3d 716, 730 (9th Cir. 2004) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 808 (1985)) (emphasis originally in Cornelius), petition for cert. filed, 73 U.S.L.W. 3514 (U.S. Feb. 15, 2005) (No. 04-1115).

Reasonableness in this context is evaluated in light of the particular function served by the forum. DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ., 196 F.3d 958, 967-68 (9th Cir. 1999) ("The 'reasonableness' analysis focuses on whether the limitation is consistent with preserving the property for the purpose to which it is dedicated."); see also Brown, 321 F.3d at 1222 ("[r]estrictions on free expression in a nonpublic forum are constitutional only if the distinctions drawn are (1) 'reasonable in light of the purpose served by the forum' and (2) 'viewpoint neutral.'") (quoting Cornelius, 473 U.S. at 806).

Plaintiffs argue that a 1981 Ninth Circuit case involving the JFJ and defendant controls the decision here under the principles

15 - OPINION & ORDER

of res judicata. In <u>Rosen v. Port of Portland</u>, 641 F.2d 1243 (9th Cir. 1981), the plaintiff, JFJ Chairman Moishe Meyer Rosen arrived at PDX by plane and began distributing religious literature in the airport terminal. He was arrested for violating a Port ordinance requiring advance registration by those desiring to exercise First Amendment rights at the terminal.

Although the ordinance was upheld by the district court, the Ninth Circuit found it unconstitutional. The court addressed two provisions: one requiring one business day's notice of an intent to distribute literature, picket, demonstrate, or otherwise communicate with the general public, and a second one requiring advance disclosure of the names, addresses, and telephone numbers of the sponsoring person and "responsible" person. <u>Id.</u> at 1244-45.

Because the case preceded <u>Perry</u> and <u>Lee</u>, there was no discussion of whether the airport was a traditional public forum, a designated public forum, or a nonpublic forum. The court simply applied the then-prevailing strict scrutiny analysis. <u>Id.</u> at 1246. The court found that neither provision could survive under strict scrutiny.

"The doctrine of res judicata provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." <u>Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation omitted). "Three elements constitute a successful res judicata defense. . . . Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." <u>Id.</u> (footnote and internal quotation omitted).

16 - OPINION & ORDER

Because of the decisions in <u>Perry</u> and <u>Lee</u>, plaintiffs may not rely upon the holding in <u>Rosen</u> and the doctrine of res judicata to control the outcome in the instant case. While <u>Rosen</u> applied strict scrutiny to the challenged policy at PDX, <u>Perry</u> and <u>Lee</u> clearly hold that an airport is a nonpublic forum to which strict scrutiny of a regulation affecting free expression does not apply. A change in law provides an exception to the doctrine of res judicata. <u>See</u> <u>Clifton v. Attorney Gen. of Cal.</u>, 997 F.2d 660, 663 (9th Cir. 1993) (recognizing the traditional exception to res judicata where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation).

B. Discussion

1. Summary Disposition of Certain Challenges

Plaintiffs raise a laundry-list of challenges to the policy in their Complaint and in the summary judgment briefing. I first dispose of several of these arguments as being either inconsistent with a facial challenge or inconsistent with a challenge to a regulation in a nonpublic forum. Compl. at ¶ 69 (alleging policy and actions are viewpoint and content based restrictions on speech; defendant's specific actions not at issue here and on its face, the policy is content and viewpoint neutral); ¶¶ 71, 74 (alleging policy not supported by a compelling state interest and not narrowly tailored; compelling state interest test and narrowly tailored requirement not applicable in nonpublic forum; <u>Cornelius</u>, 473 U.S. at 809 (no requirement in nonpublic forum that government's interest be compelling or that restriction be narrowly tailored)); ¶¶ 72, 75 (alleging policy not least restrictive means

17 - OPINION & ORDER

to accomplish permissible government purpose and more burdensome than necessary; least restrictive means/more burdensome than necessary analysis not applicable in content neutral policy for nonpublic forum).

In paragraph 73 of the Complaint, plaintiffs allege that the policy is unconstitutional because it is not supported by a significant government interest. Compl. at ¶ 73. In Lee, the Supreme Court indicated that airports had a legitimate interest to assure that travelers are not unduly interfered with given that the primary function of airports is to facilitate air travel. Lee, 505 U.S. at 682-84. Moreover, in the post-September 11, 2001 world, air travel is more encumbered than it was when Lee was decided, providing airports with an even stronger interest in regulating non-travel related interferences with passengers. Here, the policy at issue on its face articulates significant governmental interests in the need to ensure passenger safety, traffic flow, and airport security. Plaintiffs' "lack of significant government interest" argument is without merit.

In paragraph 76 of the Complaint, plaintiffs argue that defendant's policy does not leave open ample alternative channels of communication. Compl. at ¶ 76. Even assuming that an "alternative channel of communication" argument applies to time, place, and manner restrictions in nonpublic fora, "[t]he Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." Colacurcio v. City of Kent, 163 F.3d 545, 554 (9th Cir.

18 - OPINION & ORDER

1998).  That is not the case here.

   To the extent plaintiffs' "alternative channels" argument is meant to suggest that the designated areas are somehow constitutionally insufficient, that challenge fails because a nonpublic forum does not need to provide unrestricted access based on a speaker's unhappiness with the government-chosen location. Cornelius, 473 U.S. at 809 ("The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message."); ISKCON Miami, Inc. v. Metropolitan Dade County, Fla., 147 F.3d 1282, 1290 (11th Cir. 1998) (upholding regulation limiting airport leafleting to certain locations as valid place restrictions on speech; noting questions concerning allocation of speech for activities at airport were for airport director's discretion).

                    2.   Discussion Regarding Prior Restraint,
                         Discretion, Overbreadth, Vagueness, Judicial
                         Review, & Identification Arguments

   Next, several of plaintiffs' arguments merit more in-depth discussion.  Plaintiffs' prior restraint, "unfettered discretion," overbreadth, vagueness, judicial review, and identification arguments fall into this category.  I address them in turn.

                         a.   Prior Restraint

   Plaintiffs maintain that the permit requirement itself acts as an unconstitutional prior restraint.  In support of their position, plaintiffs cite three cases in which courts have held permit ordinances unconstitutional because of various notice requirements. All three cases, however, are public fora cases and are not relevant to the analysis for a nonpublic forum like PDX.  Douglas v. Brownell, 88 F.3d 1511 (8th Cir. 1996) (anti-picketing ordinance

19 - OPINION & ORDER

which applied to a public forum residential sidewalk and a parade ordinance which applied to public forum city streets; court held five-day notice requirement unconstitutional); Grossman v. Portland, 33 F.3d 1200 (9th Cir. 1994) (permit requirement for access to public forum public park; court held seven-day notice requirement unconstitutional); NAACP v. City of Richmond, 743 F.2d 1346 (9th Cir. 1984) (parade ordinance which applied to public forum city streets; court held twenty-day notice requirement unconstitutional).

A Second Circuit case explains the relevant distinction between a public forum and a nonpublic forum in the context of examining a prior restraint:

> "the context in which [a prior restraint] occurs can affect the level of scrutiny applied." Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749 (7th Cir. 1999). Prior restraints in a nonpublic forum have been upheld as long as they were reasonable and viewpoint-neutral. See Cornelius, 473 U.S. at 813, 105 S. Ct. 3439 (holding that a federal charity drive, a nonpublic forum, could limit participation to a number of select charities as long as the restriction was reasonable and viewpoint-neutral); Muller v. Jefferson Lighthouse Sch., 98 F.3d 1530, 1540 (7th Cir. 1996) (holding that school officials could prevent a student from distributing invitations in a public elementary school, a nonpublic forum, because the restraint was reasonable). A nonpublic forum by definition is characterized by "selective access," Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 679, 118 S. Ct. 1633, 140 L.Ed.2d 875 (1998), which necessarily means that the state can select or limit who may speak and what may be said prior to its expression as long as the restrictions meet the requirements of reasonableness and viewpoint-neutrality. Accordingly, a restriction on expression which would otherwise be deemed a prior restraint if it had been applied in a public forum is valid in a nonpublic forum as long as it is reasonable and viewpoint-neutral. See id. (holding that a state-sponsored televised election debate was a nonpublic forum, and state officials could exercise broad editorial discretion in deciding which candidates to invite as long as the decisions were reasonable and viewpoint-neutral); Hazelwood v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (concluding that a

high school newspaper was a nonpublic forum and that prepublication control by school officials was reasonable); <u>Greer v. Spock</u>, 424 U.S. 828, 840, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (concluding that a military base was a nonpublic forum, and that military officials could require prior approval before allowing the distribution of political campaign literature, and noting that restrictions had not been applied "irrationally").

<u>Perry v. McDonald</u>, 280 F.3d 159, 171 (2d Cir. 2001).

The policy at PDX is content and viewpoint neutral. Requiring a permit before engaging in constitutionally protected expressive activity is not unreasonable in light of the airport's primary purpose of facilitating air travel.

First, given that it is constitutionally permissible to restrict free expression activity to certain locations in the airport, and that the airport has chosen to do so, it is reasonable to require a permit so that PDX officials can assign space on a first come, first served basis and prevent an over-concentration of free expression activity in one place or at one time. This protects the airport's primary function while allowing the expressive activity.

Second, while the airport is open to the public, it is not unreasonable to request a permit to learn who will actually be on-site. Most travelers are transient and their time in the airport facility is limited. Persons distributing leaflets on the other hand, many remain in the airport for hours on end, day after day. It is not unreasonable for PDX officials to require a permit to acquire knowledge of who is regularly using the airport. This knowledge is even more relevant post-September 11, 2001.

The permit requirement policy, applicable to the activities in this nonpublic forum, are content and viewpoint neutral and

reasonable. As such, the policy does not violate plaintiffs' First Amendment free speech rights as an unconstitutional prior restraint.

### b. Discretion

Plaintiffs contend that defendant's policy is unconstitutional because it impedes their right to free speech by granting unfettered discretion to defendant to grant or deny permit applications. This issue arises in two contexts: the initial grant of a permit and after a prior permit violation.

### i. Initial Grant of Permit

Plaintiffs contend that defendant's policy allows Sorensen unbridled discretion to grant or deny a permit application and that this creates a scheme allowing discretionary enforcement. Plaintiffs argue that it is unconstitutional because the presence of discretion fosters unequal application and creates a substantial risk of the suppression of ideas.

The policy does not expressly state that the Port retains discretion over initial permit applications. Plaintiffs argue that because the policy does not state that the Port <u>shall</u> issue a permit upon completion of an application, Sorensen possesses unconstitutional unfettered discretion to grant or deny a permit request.

I disagree with plaintiffs' reading of the policy. I agree that the word "shall" does not appear. However, after the policy states that any party exercising free speech rights on airport property must obtain a permit from the Terminal Services Supervisor prior to the exercise of such rights on Airport property, it then states that "[t]he Permit <u>will</u> specify reasonable time, place, and

22 - OPINION & ORDER

manner requirements for the exercise of free speech rights. . . .
." Exh. F. to Karen O'Kasey Affid. at p. 1 (emphasis added). It
also states that "[a] limited number of locations <u>will</u> be assigned
. . . " and that a permit "<u>will</u> be valid for a period . . . ." <u>Id.</u>
(emphasis added). Additionally, constraint on discretion is
apparent from the policy's express provision that permit locations
will be assigned on a first come, first served basis.

I construe this policy language as synonymous with the use of
the word "shall" and interpret the policy as not allowing Port
officials discretion in granting permit applications. <u>See</u> <u>Morrison</u>
<u>v. Olson</u>, 487 U.S. 654, 682 (1988) ("it is the duty of federal
courts to construe a statute in order to save it from
constitutional infirmities"). Moreover, while Sorensen indicated
in her deposition that she would reject an application that
requested permission to distribute sexually offensive material, her
testimony is irrelevant in this facial challenge.[2]

---

[2] During oral argument, plaintiffs cited <u>Hopper v. City of</u>
<u>Pasco</u>, 241 F.3d 1067 (9th Cir. 2001) for the proposition that the
Court should not examine a policy as written but as it is
practiced. Plaintiffs contend that Sorensen's testimony shows
that as practiced, Sorensen exercises discretion. <u>Hopper</u> is not
on point. There, the plaintiffs argued that the exclusion of
their artwork from a display at Pasco City Hall violated their
First Amendment rights. The court noted that the first issue to
resolve was the nature of the forum, "because the extent to which
the Government may limit access depends on whether the forum is
public or nonpublic." <u>Id.</u> at 1074 (internal quotation omitted).
The court determined that City Hall was either a designated
public forum or a limited public forum. <u>Id.</u> at 1075. It noted
that in determining whether a designated public forum has been
established, the court looks not only to the government policy,
but also to the practice of the government in order to ascertain
whether it intended to designate a place not traditionally open
to assembly and debate as a public forum. <u>Id.</u> Notably, the
examination of the city's practice occurred only on the limited

ii.  Permit Violations

        The policy provides that a permittee who violates a permit may
be refused the right to obtain any future permits for the period of
time the Port deems reasonable, in the Port's sole discretion.
Exh. F to O'Kasey Affid. at p. 2.  The provision encompasses two
discretionary acts:  whether to refuse the right to obtain any
future permits at all ("may be refused"), and if so, for how long.
The discretion afforded is not completely unfettered, however,
because there must be a prior permit violation for this provision
to apply.

        Plaintiffs rely on <u>Rosen</u> to argue that this provision is
unconstitutional as a total prohibition of all future expression.
<u>Rosen</u> did not actually reach a conclusion that the provision at
issue there (giving the Port discretion to ban permit violators for
six months for the first violation and twenty-four months for
second violation), but the court noted that the Port may wish to
review this provision in light of case law indicating that total
prohibitions of future expression were unconstitutional.  <u>Rosen</u>,
641 F.2d at 1249 n.14.  This remark is dicta and not controlling.
More importantly, <u>Rosen</u> is inapplicable here given the change in
law discussed above.

        Defendant relies on <u>Thomas</u> and <u>New England Regional Council of
Carpenters v. Kinton</u>, 284 F.3d 9 (1st Cir. 2002).  <u>Thomas</u>,
discussed above, held that an ordinance which specified

question of whether the defendant had created a designated public
forum.  The case does not support plaintiffs' argument that the
practice of the government entity is relevant in analyzing
whether or not a policy, on its face, gives that entity
unfettered discretion.

circumstances under which a permit "may" be denied, was not unconstitutional absent any evidence of abuse. Thomas, 534 U.S. at 324-25.

In Kinton, the First Circuit held, in a public forum case, that an ordinance allowing the revocation of a permit based on particular conduct by leafleters was constitutional because it granted

> discretion to limit activity at the time when it occurs, [and thus] it is not a prior restraint on speech, but, rather, a means through which public safety personnel may terminate an activity that becomes dangerous or comes to violate the time, place, and manner restrictions contained in the regulations. As such, the proviso constitutes an unremarkable and ubiquitous safeguard, constitutional on its face.

Kinton, 285 F.2d at 25. The court noted that "[w]hether the power that it vests in public officials may, at some future date, be applied in an unconstitutional manner is not now before us." Id.

I agree with defendant that in this facial attack, the provision under which the Port may refuse to provide a permit to a prior permit violator, is not unconstitutional absent a history of abuse. No such history is demonstrated here.

c. Overbreadth

Plaintiffs allege that the policy is an unconstitutionally overbroad restriction on expressive activity. They argue that the permit regulation is overbroad because a permit is required regardless of the number of people seeking to engage in speech activities, even if no other speech activity is in progress at the same time.

Generally, an overbreadth argument is one where the plaintiff concedes that a regulation may be applied to him or her, but it is

25 - OPINION & ORDER

unconstitutionally overbroad because it sweeps a substantial amount of protected expression into its regulatory ambit. Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973) (overbreadth doctrine permits "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity"); Nunez v. City of San Diego, 114 F.3d 935, 949 (9th Cir. 1997) (overbreadth doctrine allows a plaintiff to challenge a statute because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression) (internal quotation and ellipsis omitted).

Plaintiffs' overbreadth argument is atypical because they do not concede that their own conduct may be regulated under the policy. That is, they do not appear to contend that they are a large group whose conduct may be regulated under a narrowly drawn policy, but that this policy is overbroad because it applies to both large groups and a single leafleters. Plaintiffs seem to suggest that because the policy regulates all leafleters, regardless of the number and regardless of the presence of other leafleters, it is overbroad.

In any event, I conclude that the policy is not unconstitutionally overbroad. In light of PDX being a nonpublic forum, the relevant question is whether the policy is reasonable in light of the forum's primary purpose. The airport is legitimately concerned about all leafleters, whether they are in large or small groups. Moreover, if single leafleters or small groups of leafleters did not have to apply for a permit, an accumulation of

single/small group leafleters could occur, producing the same congestion and safety concerns as present with a larger group. The fact that the policy applies to all persons desiring to engage in free speech activity, regardless of the number, does not make it unconstitutionally overbroad. It remains a reasonable regulation in light of the airport's primary function.

### d. Vagueness

Plaintiffs contend that the policy is unconstitutionally vague. A "void for vagueness" challenge may be brought against regulations if the terms are vague and would result in arbitrary and discriminatory enforcement by law enforcement officials. National Endowment for the Arts v. Finley, 524 U.S. 569, 588 (1988).

The policy is not unconstitutionally vague. The policy addresses location and the size of signs that may be brought. It clearly spells out what a person must do before engaging in free speech activities. It informs the applicant that permits are available on a first come, first served basis. It explains that a person cannot bring physical obstructions such as a table or chair, to the free speech area. It indicates that the Port will provide appropriate tables and chairs. The permit specifies the location and times for allowable activity. This is not a regulation that "traps the innocent" by not providing fair warning.

### e. Application/Judicial Review

Plaintiffs argue that the policy is unconstitutional because there is no time limit in which permit applications are approved or denied and the policy contains no provision for judicial review. The law does not support plaintiffs' argument.

27 - OPINION & ORDER

In *Southern Oregon Barter Fair*, one of the challenges made against the Oregon Mass Gathering statute was that the statute lacked any specific deadline for action on an application and lacked a provision for prompt judicial review. The court rejected the argument and held that because the statute was not an "explicit censorship" scheme, but was instead a content neutral time, place, and manner permit scheme, it "need not include either a deadline for consideration by the governing body or a provision for prompt judicial review." 372 F.3d at 1138.

The court noted that in a 1965 decision, the Supreme Court held that a content-based film licensing process must contain three procedural safeguards or else be classified as unconstitutional: (1) a decision to issue or deny a license must be made within a brief, specified and reasonably prompt period of time; (2) the scheme must also provide an avenue for prompt judicial review in the event a license is denied; and (3) the licensor is to bear the burden of going to court and justifying a license denial. Id. at 1137 (citing Freedman v. Maryland, 380 U.S. 51, 58-60 (1965)).

But, the court noted, in Thomas, the Supreme Court held that "none of the Freedman safeguards are required of content-neutral time, place, and manner permit schemes." Id. (citing Thomas, 534 U.S. at 320-23). Thus, given that the Oregon Mass Gathering statute was content-neutral, it did not need to include a deadline for determinations of permit applications or prompt judicial review.

Southern Oregon Barter Fair controls the outcome here. Defendant's policy is a content neutral time, place, and manner permit scheme, similar to the content neutral time, place, and

28 - OPINION & ORDER

manner permit schemes at issue in <u>Southern Oregon Barter Fair</u> and <u>Thomas</u>. As such, under <u>Thomas</u>, the policy is not required to have a deadline for consideration by the Port or a provision for judicial review.

f. Identification Requirement

Plaintiffs contend that the policy's requirement that permit applicants identify themselves is unconstitutional. Plaintiffs rely on <u>Rosen</u>. For the reasons explained above, this reliance is misplaced for a policy applying in a nonpublic forum.

Under a reasonableness inquiry, the identification requirement passes constitutional muster. The policy requires the identity of the speaker to allow the airport to know who is on the premises distributing literature. It is also the only practical way to inform an applicant about what date the party may engage in free speech activities. Because the permits operate on a first come, first served basis, an applicant may not be able to distribute literature on a particular day requested and the Port might need to contact them. I conclude that the identification requirement is reasonable in light of the airport's primary purpose.

III. Facial Challenge - Free Exercise of Religion

As noted above, plaintiffs have standing to pursue a facial free exercise claim. In <u>Employment Division, Department of Human Resources of Oregon v. Smith</u>, 494 U.S. 872 (1990), the Supreme Court concluded that the First Amendment's free exercise clause is not ordinarily offended by "neutral" and "generally applicable" laws that merely have "the incidental effect" of burdening religiously motivated conduct. <u>Id.</u> at 878, 881.

While the free exercise clause forbids any regulation of

29 - OPINION & ORDER

beliefs as such, Church of Lukumi Babalu Aye., Inc. v. Hialeah, 508
U.S. 520, 533 (1993), a neutral and generally applicable law that
burdens conduct regardless of whether it is motivated by religious
or secular concerns is not subject to strict scrutiny. Id. at 546;
Smith, 494 U.S. at 878. A law is neutral if it does not target
religiously motivated conduct either on its face or as applied in
practice. See Lukimi, 508 U.S. at 533-40.

If the targeted law is of general application and is not
targeted at religion, it is subject only to rational basis
scrutiny, even though it may have an incidental effect of burdening
religion. San Jose Christian College v. City of Morgan Hill, 360
F.3d 1024, 1032 (9th Cir. 2004). Under rational basis review, the
law will pass constitutional muster unless it is not rationally
related to a legitimate governmental interest. Id.

However, if such a law burdens the free exercise of religion
and some other constitutionally-protected activity, the strict
scrutiny test applies and the law must be narrowly tailored to
advance a compelling government interest. Id. This type of First
Amendment claim is sometimes described as a "hybrid rights" claim.
Id.

Because I conclude that plaintiffs' free speech challenge to
the Port's policy fails, the policy is subject only to a rational
basis review in the context of the facial free exercise challenge
because the policy is generally applicable, neutral, and does not
regulate plaintiffs' beliefs as such. Under that level of
scrutiny, plaintiffs' free exercise claim must fail because, for
the all of the reasons articulated in the context of the free
speech claim, the policy is rationally related to a legitimate

governmental interest.

CONCLUSION

Defendant's summary judgment motion (#15) is granted.

IT IS SO ORDERED.

Dated this  5th  day of  May, 2005.


/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

31 - OPINION & ORDER